16-924
*United States v. Genao*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2016

(Argued: February 27, 2017          Decided: August 28, 2017)

Docket No. 16-924

————————————

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

ROMAN BARTOLO GENAO

*Defendant-Appellant.*

————————————

B e f o r e:

KATZMANN, *Chief Judge*, LYNCH and CHIN, *Circuit Judges.*

————————————

Defendant-appellant Roman Bartolo Genao appeals from a sentence and final judgment of conviction entered on March 24, 2016, by the United States District Court for the Eastern District of New York (Sterling Johnson Jr, *J.*). Genao was convicted of illegally reentering into the United States after having been deported. At sentencing, the district court applied a 16-level enhancement for a prior conviction of a "crime of violence" under § 2L1.2(b)(1)(A)(ii) (2015) of the United States Sentencing Guidelines, and sentenced Genao to 46 months' imprisonment. We agree with Genao that the Pre-Sentence Report ("PSR") misidentified one of his prior convictions and that, at least in the absence of further explanation or findings not made by the district court, no prior conviction of Genao's that was before the court could support the enhanced sentence. We therefore **VACATE** Genao's sentence and **REMAND** his case to the district court for *de novo* resentencing.

————————————

MICHAEL T. KEILTY (Emily Berger, on the brief), Assistant United States Attorneys, *for* Bridget M. Rohde, Acting United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee*.

ALLEGRA GLASHAUSSER, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant*.

————————————

GERARD E. LYNCH, *Circuit Judge*:

Roman Bartolo Genao appeals from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson Jr, *J.*), sentencing him to 46 months in prison upon his plea of guilty to a charge of illegally attempting to reenter the United States after having been deported. He

2

argues that his sentence was procedurally unreasonable because the district court did not correctly calculate the sentencing range recommended by the United States Sentencing Guidelines and to give a sufficient explanation for the sentence imposed. He also argues that his sentence was substantively unreasonable because it was excessive under the circumstances. Because we find merit in Genao's procedural arguments, we **VACATE** the sentence and **REMAND** to the district court for *de novo* resentencing.

## BACKGROUND

In 2009, Genao, a national of the Dominican Republic and a long-term lawful permanent resident of the United States, was convicted in New York state court of first-degree burglary and first-degree robbery. According to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office in connection with the present case, police reports described the 2009 crime as a home invasion in which Genao "pushed his way into the victim's home, grabbed her by the hair, placed a knife against her throat, and demanded money," obtaining $1,200 in cash and a signed check for $4,000 payable to cash, and later "called the victim via telephone, and told her that if she called the

3

police or anyone else, he would kill her family and burn down her home." PSR ¶ 24. Genao received a six-year prison sentence, and, after completing his term of incarceration in February 2015, was deported and told that he could not return to the United States. Genao attempted to reenter the United States on August 23, 2015 by flying via commercial airline to New York City, but was detained upon arrival. He was indicted for illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and pleaded guilty to the offense on November 19, 2015.

The PSR prepared in connection with Genao's sentencing did not accurately describe the charges on which he had been convicted in the prior New York case. Although the PSR correctly stated that Genao had been convicted under New York Penal Law § 140.30(3) for first-degree burglary with a dangerous instrument, it incorrectly identified Genao's robbery conviction as one of second-degree robbery of a motor vehicle under New York Penal Law § 160.10(3), when his actual crime of conviction was first-degree robbery with a dangerous instrument under New York Penal Law § 160.15(3). The precise nature of the conviction was relevant to the calculation of Genao's Guidelines sentencing range: relying on the incorrect robbery conviction, the PSR calculated

4

that Genao's base offense level of 8 should be increased by 16 levels on the basis

that second-degree robbery under New York law is a "crime of violence"

warranting an enhanced sentence under the version of the Guidelines then in

effect. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015). [1] This 16-level enhancement,

coupled with his criminal history category of III, and a three-level credit for

accepting responsibility for the offense, raised his advisory Guidelines

sentencing range to 46–57 months of imprisonment, as compared to the 18-24

month advisory range Genao would have been accorded based on the 8-level

enhancement for "a conviction of an aggravated felony" that was not a "crime of

violence." *Id*. § 2L1.2(b)(1)(C) (2015).

Defense counsel objected to the 16-point enhancement both orally and in

writing, arguing that the robbery was not a crime of violence because robbery

under New York law requires only *de minimis* use of force. At the sentencing

hearing, the sentencing judge responded skeptically, asking, "[H]e put a knife to

the throat of a victim, had her deposit a $4,000 check into his account. You say

---

[1] The relevant Guidelines have since been amended, and use a somewhat simpler system for calculating enhancements to the base offense level for illegal reentry based on crimes committed prior to the illegal reentry offense. *See* U.S.S.G. § 2L1.2(b)(2) (2016).

5

that's not a crime of violence?" App. 31. Characterizing the application of the enhancement as "an academic issue," defense counsel reminded the court that under the categorical approach, the sentencing court must "not look at the actual facts but look at the facts that the least culpable person could commit if they were sentenced to that crime." App. 31–32. As explained in more detail below, to determine whether a prior offense is a "crime of violence" that requires application of a sentencing enhancement, the sentencing judge is to consider only the necessary elements of the statutory definition of the crime, rather than the facts particular to the defendant's conduct. *See United States v. Reyes*, 691 F.3d 453, 458 (2d Cir. 2012) (describing the necessary inquiry for determining whether predicate offense is a "crime of violence" under the analogous career offender guidelines, U.S.S.G. § 4B1.2).Without explanation, the sentencing court rejected defense counsel's arguments on the crime of violence issue, added the 16-point enhancement, and determined that the Guidelines range was 46–57 months. The court then stated, without further elaboration, that it had "consider[ed] the factors of 3553(a)" and sentenced Genao to a term of imprisonment of 46 months, a $100 special assessment, and three years' supervised release. App. 36.

DISCUSSION

Genao now appeals his prison sentence, which he contends is both procedurally and substantively unreasonable.

## I.     Procedural Unreasonableness

We turn first to Genao's procedural unreasonableness claim. A district court commits procedural error "when it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal citation and quotation marks omitted). "A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (footnote omitted).

Genao argues that his sentence was procedurally unreasonable because the district court, over the explicit objection of defense counsel, incorrectly applied

the 16-level enhancement, and because "the district court fell short of satisfying

the basic requirements of § 3553(c) [when] it provided no reason for its choice of

sentence," Def. Br. at 24, an objection Genao concedes he did not raise below.**²** In

this case, the two issues somewhat overlap, insofar as our review of the

Guideline calculation is hampered by the fact that the sentencing court did not

explain the reasons for its application of the 16-level enhancement, or for its

rejection of Genao's argument based on the categorical approach.

## A. Statements of Reasons

We begin by noting the importance of an adequate statement of reasons for

the selection of a particular sentence. Adequate explanation is critical to the

---

² The presence or absence of an objection below affects the standard of review applied on appeal. Where an objection has been made, we review the district court's application of the Guidelines *de novo*, where, as here, the interpretation of the Guidelines is in question. *See United States v. Folkes*, 622 F.3d 152, 156 (2d Cir. 2010). In contrast, "[w]e review errors not raised in the district court under the plain error standard of Rule 52(b), which states that '[a] plain error that affects substantial rights may be considered even though it was not brought to the [lower] court's attention.'" *United States v. Wernick*, 691 F.3d 108, 113 (2d Cir. 2012) (quoting Fed. R. Crim. P. 52(b)). To be plain error, "there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alterations in original) (citation and internal quotation marks omitted).

discharge of the sentencing court's responsibility under 18 U.S.C. § 3553(c), which instructs that "[t]he court, at the time of sentencing, *shall state in open court the reasons for its imposition of the particular sentence*" (emphasis added). The sentencing court "must make an individualized assessment based on the facts presented." *United States v. Williams*, 524 F.3d 209, 215 (2d Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "Requiring judges to articulate their reasons serves several goals," including "to ensure that district courts actually consider the statutory factors and reach reasoned decisions" for the chosen sentence. *Cavera*, 550 F.3d at 193.

Here, after stating that it would apply the 16-level enhancement, the sentencing court explained only that it had "taken into consideration the factors of 3553(a), oral argument and the submissions, and . . . believe[d that] the sentence that [wa]s sufficient but not greater than necessary to meet the aims of the statute" was 46 months' imprisonment. App. 36. Moreover, the court did not provide any further explanation for the choice of sentence in the written statement of reasons. "Stating no reasons at all 'plainly' falls short of the requirement to state reasons that is set forth in § 3553(c), no matter what the

9

required level of 'specificity' may be." *United States v. Lewis*, 424 F.3d 239, 245 (2d Cir. 2005); *see also United States v. Zackson*, 6 F.3d 911, 923–24 (2d Cir. 1993) (remanding for an adequate statement of reasons where the sentencing judge's explanation was simply "I have considered everything"). It could perhaps be inferred from the court's question citing the PSR's description of the facts allegedly underlying Genao's state-court conviction that the court was concerned about the seriousness of his prior criminal conduct, which could bear on a number of the sentencing factors listed in 18 U.S.C. § 3553(a). *See, e.g.,* § 3553(a)(1) (instructing sentencing courts to consider "the history and characteristics of the defendant"); § 3553(a)(2)(C) (instructing sentencing courts to consider the need for the sentence "to protect the public from further crimes of the defendant"). But the defendant, the public, and appellate courts should not be required to engage in guesswork about the rationale for a particular sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007).

There is no requirement that a judge imposing a sentence provide lengthy or elaborate explanations of the often multiple aggravating and mitigating factors about the offense and the offender, or the precise weight assigned by the

10

court to the various, sometimes competing policy considerations relevant to sentencing. The line between appropriately succinct and inadequately silent may be difficult to draw in particular cases. Here, however, the sentencing court's sparse and general remarks about the particular sentence are compounded by the absence of an explanation for the legal ruling applying the 16-level enhancement for prior commission of a "crime of violence." Insofar as any explanation for that ruling can be inferred from the record, it appears to be one that is legally flawed: the court appears to have found that Genao's crime was a violent one based on the particular facts allegedly underlying his conviction, when the law, as mentioned above and discussed in more detail below, requires the sentencing judge to look only to the necessary elements of the statutory definition of the crime, rather than the particular facts of the defendant's conduct, in making that judgment. *See Reyes*, 691 F.3d at 458.

The absence of an explanation for that ruling is significant because defense counsel argued, both in a written submission and at the sentencing hearing, that the enhancement that elevated Genao's guideline range from 18–24 months to 46–57 months should not have applied. Nevertheless, the court did not explain

why it rejected that argument, nor identify why (or which of) Genao's prior convictions constituted a "crime of violence." "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence," the sentencing court should typically "explain why he has rejected those arguments," which "provide[s] relevant information to . . . the court of appeals." *Rita*, 551 U.S. at 357, 358. Particularly given the necessarily complex analysis required by the categorical approach, and the confusion in the PSR about the precise offenses of which Genao had been convicted, such an explanation would aid both the litigants and this Court in identifying the specific basis for the "crime of violence" enhancement.

In the absence of such an explanation, we are left to conduct that analysis in the first instance ourselves. Ordinarily, when the sentencing court fails to explain its application of a sentencing enhancement in open court, "the 'open court' requirement [of § 3553(c)] may [nevertheless] be satisfied by the district court adopting the PSR in open court. Adopting the PSR in open court puts the defendant on notice of the grounds for the sentence imposed since the defendant usually has either seen his own PSR or is entitled to ask for it." *United States v.*

*Molina*, 356 F.3d 269, 277 (2d Cir. 2004). As in *Molina*, here the district court did not either state "its reasons or adopt the PSR in open court." *Id.*[3] "[W]e have found that failure to satisfy the open court requirements of § 3553(c) . . . does not constitute 'plain error' if the district court relies on the findings in the PSR, and the factual findings in the PSR are adequate to support" the enhancement in question. *United States v. Carter*, 489 F.3d 528, 540 (2d Cir. 2007). Here, however, as will appear, the findings of the PSR do not clearly support the enhancement.

## B. Robbery Conviction as a "Crime of Violence"

As noted above, the PSR incorrectly identified Genao's prior robbery conviction as second-degree robbery of a motor vehicle under N.Y. Penal Law § 160.10(3).[4] And while the PSR indicated that the conviction was "verified" by "court records" as well as the certificate of disposition, the government did not attach those records to its sentencing memorandum, that memorandum *also* cited the wrong statutory provision, and there is no evidence that even a single

---

[3] The sentencing judge did adopt the PSR in the written Statement of Reasons.

[4] On appeal, the parties agree that Genao's actual conviction was for first-degree robbery with a dangerous instrument in violation of N.Y. Penal Law § 160.15(3).

13

document that correctly identified Genao's prior convictions was before the sentencing court.

The absence of correct information concerning Genao's prior robbery conviction is significant because whether either of his convictions constituted a "crime of violence" for purposes of the Illegal Reentry Guideline provision's specific offense enhancement was the chief legal issue in dispute during the sentencing hearing. Defense counsel objected to the PSR's recommended 16-level enhancement for a "crime of violence" based on the robbery conviction, arguing that without that enhancement, Genao's Guidelines range would drop from 46–57 months to 18–24 months. Genao's objection was well taken: because Genao in fact had never pleaded guilty to the charge identified in the PSR — second-degree robbery in violation of N.Y. Penal Law § 160.10(3) — that purported robbery conviction could not support the application of the 16-level enhancement.

## C. Burglary Conviction as a "Crime of Violence"

Our inquiry does not end there, however. At sentencing, the government argued that whether the robbery conviction qualified as a crime of violence

14

under the categorical approach was "moot" because Genao's first-degree

burglary conviction could also support the enhancement, since "in the sentencing

guidelines burglary is also listed as a crime of violence." App. 35–36. Despite the

government's assurance, however, that issue is not so straightforward. The

commentary to the relevant portion of the Guidelines in effect at the time of

Genao's sentence stated that:

> For the purposes of subsection (b)(1):
>
> 'Crime of violence' means any of the following offenses under federal, state, or local law: . . . burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015). If the police reports relating to Genao's

conviction are correct, the actual behavior for which he was convicted was the

burglary of a dwelling, in the narrowest sense of the word. "In determining

whether a prior conviction can serve as a predicate offense for a [sentencing]

enhancement," however, the sentencing judge must apply either the "categorical

or modified categorical approach." *United States v. Beardsley*, 691 F.3d 252, 259 (2d

Cir. 2012). Both approaches require the sentencing court to consider the

15

minimum elements that must be proven beyond a reasonable doubt to secure a conviction for that offense.

Under the categorical approach, the sentencing court must "'look only to the statutory definitions'—*i.e.,* the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). One of the justifications for the categorical approach's "elements-only inquiry" is a concern for fairness to defendants. *Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016). Even when a defendant goes to trial, reliance on the "non-elemental fact[s]" of a prior conviction "are prone to error" because "a defendant may have no incentive to contest [at trial] what does not matter under the law" and may "even be precluded from doing so." *Id.* In such a circumstance, "inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." *Id.* Similarly, when a defendant pleads guilty, he need only admit to the specific elements of the charged offense, and has no reason either to admit or contest prior governmental accounts of his alleged conduct.

The analysis required by the categorical approach is important where an aspect of the calculation of a defendant's Sentencing Guidelines range turns on the single factor of a defendant's prior criminal record. Where a particular sentencing enhancement applies simply because the defendant has been convicted of a particular category of crime — here, a "crime of violence" — it is critical that the prior conviction meets the specific criteria established by the Sentencing Commission for the application of that enhancement. After all, the district court lacks discretion to alter the Guidelines calculation because, for example, the particular facts of the prior offense are mitigated in some way, so long as the predicate prior offense is of the nature specified in the statute. The converse also follows: Since the Guidelines calculation turns on the offense of conviction, if that offense is *not* inherently of the nature specified by Congress, the court has no authority to decide that the particular facts of the offense are sufficiently bad that the enhancement applies nonetheless.

Here, citing to *Mathis*, 136 S. Ct. at 2251, and *Shepard v. United States*, 544 U.S. 13, 16 (2005), the government concedes on appeal that first-degree burglary under New York law does not qualify as a "crime of violence" under the

enumerated offenses clause of the Guidelines definition because the New York burglary statute is broader and reaches more conduct than the generic federal definition of burglary.[5] Nevertheless, the government argues that Genao's first-degree burglary conviction could constitute a crime of violence by satisfying the force clause. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (reaching "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another"). Invoking the "modified categorical approach," the government contends that the relevant sentencing documents demonstrate that Genao's conviction for burglary in the first degree was based on N.Y. Penal Law § 140.30(3), which requires the use or threatened immediate use of a dangerous instrument.

Under the modified categorical approach, for "statutes having multiple alternative elements[,] . . . a sentencing court [may] look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and

---

[5] This concession is based on the conclusion that under New York law, a "dwelling" is defined as a "building" that is "usually occupied by a person lodging therein at night," N.Y. Penal Law § 140.00(3), and a "building" in turn may include, among other things, "any structure, vehicle or watercraft," *id*. § 140.00(2). *See United States v. Lynch*, 518 F.3d 164, 170 n.8 (2d Cir. 2008) (noting New York's "expansive definition of 'building'").

colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (citation omitted). These documents are known as "*Shepard* documents." *See generally Shepard*, 544 U.S. at 20. "Accordingly, the modified categorical approach requires a two-step process: 'first, [the sentencing court] determine[s] if the statute is divisible, such that some categories of proscribed conduct render an [enhancement appropriate] . . . ; second, [the court] consult[s] the record of conviction to ascertain the category of conduct of which the [defendant] was convicted.'" *United States v. Moreno*, 821 F.3d 223, 227 (2d Cir. 2016) (quoting *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 88–89 (2d Cir. 2009)).

We can assume for purposes of this appeal that the New York first-degree burglary statute is divisible, and that a conviction under subdivision 3 would satisfy the use of force prong of the "crime of violence" definition. None of the *Shepard* documents pertaining to Genao's conviction, however, were before the sentencing court, and that court did not engage in any inquiry concerning whether Genao's burglary conviction might have constituted a crime of violence under the modified categorical approach. At no point did the court look to the

elements of the conviction; instead, it referenced only the "particular facts underlying [the] conviction[]." *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 600). Without the *Shepard* documents, we do not believe the burglary conviction could provide "factual findings in the PSR . . . adequate to support the sentence" in the absence of the court's own explanation for the chosen sentence. *Carter*, 489 F.3d at 540.[6]

---

[6] Though we assume for purposes of this decision that first-degree burglary conviction under N.Y. Penal Law § 140.30(3) could constitute a crime of violence under the force clause of U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015), we do not decide the point, since a potential counter-argument is available. To obtain a conviction under N.Y. Penal Law § 140.30(3), the state must prove beyond a reasonable doubt that either the "person guilty of burglary in the first degree . . . or another participant in the crime . . . use[d] or threaten[ed] the immediate use of a dangerous instrument." N.Y. Penal Law § 140.30(3). Genao argues that for "a crime of violence" to be based on the use, attempted use, or threatened use of force, the defendant's use of force must be intentional. **[Reply 4]** *See Leocal v. Ashcroft*, 543 U.S. 1, 8, 9 (2004) (interpreting the identical force clause in the definition of "crime of violence" in 18 U.S.C. § 16 and holding that the "critical aspect" of the force clause is that the "use . . . of physical force *against the person*" requires "active employment" and "a higher degree of intent than negligent or merely accidental conduct") (emphasis in original); *see also United States v. Castleman*, 134 S. Ct. 1405, 1414 n.8 (2014) ("Although *Leocal* reserved the question whether a reckless application of force could constitute a 'use' of force, the Courts of Appeals have almost uniformly held that recklessness is not sufficient." (citation omitted)). That is relevant because under New York law, a defendant is strictly liable for any aggravating factors present during the robbery, even if those factors were the result of a *co-defendant's* conduct. *See People v. Santiago*, 564 N.Y.S.2d 412, 413 (1st Dep't 1991). As a result, it is possible that a defendant may be convicted under § 140.30(3) without himself using or threatening the use of a dangerous weapon. In any event, this analysis was not untaken at the time of

20

Because the sentencing court did not explain the reasoning behind the sentence imposed, or expressly adopt the PSR in open court, and because the factual findings in the PSR were not, by themselves, clearly adequate to support the sentence, we conclude that Genao's sentence was procedurally unreasonable and that the sentencing judge therefore erred in calculating the Guidelines range. *Carter*, 489 F.3d at 540 (failure to explain adequately application of enhancement where factual findings in PSR do not support such application constitutes plain error); *see also United States v. Ware*, 577 F.3d 442, 452, 453 (2d Cir. 2009) (where PSR's findings are inadequate, "the absence of a meaningfully explanatory statement undermines understanding of, trust in, and respect for the court and its proceedings on the part both of those who are themselves parties to the proceeding and those who are not") (internal quotation marks omitted).

**D. Relevance of the Facts Underlying the Conviction**

The above analysis may appear unduly technical. Nowhere in his appellate brief, and at no time during the sentencing proceedings before the district court,

---

sentencing to support the alternative argument that the burglary conviction constituted a crime of violence under the modified categorical approach. In light of our disposition of the case, therefore, we need not and do not decide the question.

has Genao contested that his actual conduct in connection with his robbery and burglary convictions was as described in the PSR. If those are indeed the facts, the nature of that conduct seems far more relevant to a sentencing decision than the abstract elements of the statutory offenses to which he pled guilty, or the hypothetical least serious conduct that could support a conviction under those statutes. Thus, the district court's assumption that his crimes were unquestionably violent has a strong common sense appeal.

Nevertheless, precedent requires that the categorical approach be followed in calculating the Guidelines range. That analysis is an artifact of the nature of the Sentencing Guidelines. Particularly when the Guidelines confined the sentencing court within a narrow, near-mandatory sentencing range, it was important that in applying Guidelines that imposed severe sentencing consequences based on the single factor of a prior conviction for a particular offense of a designated nature, the sentencing court had to be certain that the crime of conviction was indeed, categorically, of that nature.

It bears emphasis, however, that while the non-elemental facts underlying a previous conviction may not be considered for the purposes of applying

22

Guidelines enhancements, those facts, if established to the satisfaction of the district court, are not thereby rendered irrelevant to sentencing. Under *United States v. Booker*, 543 U.S. 220 (2005), the technicalities governing the Sentencing Guidelines do not represent the final word on a defendant's sentence. Rather, the sentencing judge retains considerable discretion to select the sentence that is necessary to accomplish the purposes of sentencing, taking into account the factors set forth in § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), based on a wide-ranging factual inquiry. Thus, "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *Cavera*, 550 F.3d at 188.

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. It thus remains important for the district court to follow the rules for application of the Guidelines strictly and correctly. Accordingly, the sentencing court here was bound to use the categorical approach in determining whether the particular New York robbery and burglary offenses of which Genao had been

23

convicted were, based on their elements, categorically crimes of violence that required an enhanced Guidelines range under the (now repealed) Illegal Reentry Guideline.

However, if the Guidelines represent the *initial* step in sentencing, they are no longer the *stopping* point. "The Guidelines are not the only consideration" in the determination of the sentence and the sentencing court cannot simply "presume that the Guidelines range is reasonable." *Id.* at 49-50. The court must carefully evaluate whether the particular circumstances before him or her warrant a sentence outside the calculated range. In so doing, the court is expected to "consider all of the § 3553(a) factors" and arrive at an "individualized assessment based on the facts presented." *Id.* In this instance, therefore, the sentencing court remained free to impose a sentence outside the Guidelines if it found that result appropriate under all of the circumstances.

Because the district court here short-circuited that process by deciding, incorrectly, that the § 2L1.2(b)(1)(A)(ii) enhancement applied to this case, the sentence was procedurally unreasonable. But the sentencing judge's impulse that it was appropriate to consider the underlying circumstances was not inherently

erroneous. The actual, detailed facts of Genao's actions, both in his prior criminal behavior and in committing his current offense, matter, and after a proper inquiry may be taken into account by the judge at the appropriate point in the sentencing proceeding (along with all other relevant aggravating or mitigating facts), even if they are not fully captured in the specific factors that enter into the Guideline calculation.

## II.     Substantive Unreasonableness

Because we vacate Genao's sentence as procedurally unreasonable, we need not address Genao's alternate argument that his sentence was substantively unreasonable. *See Cavera*, 550 F.3d at 190, citing *United States v. Williams*, 524 F.3d 209, 215-17 (2d Cir. 2008). Addressing that argument would be particularly inappropriate here, given that when Genao is resentenced on remand, he will be sentenced under the current version of the Sentencing Guidelines, which differ from those discussed above. *See United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994) ("When imposing [a] sentence the Guidelines to be used are those in effect on the date of sentencing, unless such application implicates the *Ex Post Facto* Clause of Article I of the Constitution." (citation omitted)); *see generally* 18 U.S.C.

§ 3553(a)(4). The arcane considerations discussed above regarding application of the "crime of violence" enhancement have now been obviated by the amendments to U.S.S.G. § 2L1.2, adopted subsequent to Genao's sentencing, which replaced the enhancement for a "crime of violence" with an enhancement calculation based on the length of the longest sentence imposed for a prior criminal offense. *See* U.S.S.G. § 2L1.2(b)(2) (2016).[7]

Accordingly, we will vacate the sentence and remand for *de novo* sentencing. *See United States v. Rigas*, 583 F.3d 108, 118 (2d Cir. 2009) (*de novo* sentencing appropriate where there is a "'cogent' or 'compelling' reason for resentencing *de novo*, such as a change in controlling law").

---

[7] Indeed, in adopting the amendment, the Sentencing Commission explained both that application of the categorical approach to determine a "crime of violence" had been "overly complex and resource-intensive and often [led] to litigation and uncertainty" and that the old "enhancements for certain prior felonies committed before a defendant's deportation were overly severe," thus justifying the replacement of the enhancement for a crime of violence with a new set of factors for determining the offense level. *See* Nov. 1, 2016 Amendments to the Sentencing Guidelines, 27–28, *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20160428_Amendments.pdf.

## CONCLUSION

We have considered defendant-appellant's remaining arguments and have found in them no basis for reversal. For the reasons stated herein, the sentence imposed by the district court is **VACATED** and the case is **REMANDED** for resentencing *de novo* in accordance with the Guidelines in effect on the date that Genao is resentenced.